**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case #08-81038-CIV-RYSKAMP/VITUNAC

Smith Interior Design Group, Inc.,

      Plaintiff,

vs.

Donald L. Bryant, Jr.,

      Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

THIS CAUSE comes before the Court pursuant to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed October 8, 2008 **[DE 7]**. Plaintiff responded on October 24, 2008 **[DE 10]**. Defendant replied on November 10, 2008 **[DE 13]**. This motion is ripe for adjudication.

## I.      BACKGROUND

Plaintiff, an interior design company based in Palm Beach, Florida, asserts that Defendant, a resident of Missouri, breached an agreement under which Plaintiff was to furnish certain furniture and household items to decorate Defendant's apartment in New York City.

Plaintiff filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on July 18, 2008. Defendant was served with the Complaint on or about August 20, 2008. Defendant filed its Notice of Removal on September 19, 2008 pursuant

2

to 28 U.S.C. § 1441(a).  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and because the matter in controversy exceeds $75,000, exclusive of interest and costs.

Defendant's experience with Plaintiff began several years ago when his former wife hired Plaintiff to perform interior design work at their St. Louis home and a home in California.  In June 2006, Defendant purchased the New York apartment.  Sometime thereafter, Defendant contacted Bill Kopp ("Mr. Kopp"), Plaintiff's president, to ask if he would be willing to decorate the New York apartment.

Mr. Kopp agreed and subsequently came to St. Louis to examine the furniture in Defendant's St. Louis home to see what furniture could be used in the New York apartment. Defendant subsequently called Mr. Kopp to follow up from their earlier meeting in St. Louis. Defendant and Mr. Kopp arranged to meet in New York to discuss Mr. Kopp's vision for decorating the New York apartment.

Defendant and Mr. Kopp later met at the New York apartment, and Mr. Kopp made some recommendations for some furniture pieces and other household items.  At the meeting, Defendant selected various furniture pieces and household items based upon Mr. Kopp's recommendations.

Following this meeting in New York, Plaintiff sent to Defendant in St. Louis, Missouri, a Proposal that listed items that Defendant had selected during the New York meeting.  Defendant believed that the Proposal reflected the items Mr. Kopp had shown Defendant and that Defendant thought he had agreed to purchase.  Defendant believed that the deposit payment listed in the

3

Proposal was required to pay the manufacturers to begin production of the pieces he had ordered. With this understanding, Defendant sent the deposit payment to Plaintiff.

Plaintiff sent additional documents to Defendant in St. Louis that were in the same format as the Proposal and purported to list additional household items that were to be installed in the New York apartment.  In response, Defendant sent two additional payments to Smith Interior at Mr. Kopp's request, also with the understanding that these payments were to be made to the manufacturers.

A dispute later arose when Mr. Kopp allegedly refused to explain to Defendant the commission he was charging for Smith Interior's work at the New York apartment.  In a telephone call, Defendant informed Mr. Kopp that he would pay the wholesale costs for the household items, with the understanding that the payments would be made to the manufacturers. Defendant refused to pay any additional amount until he could calculate a reasonable commission that he would be willing to pay Plaintiff.  After reviewing backup documentation that Mr. Kopp sent to Defendant in St. Louis, Defendant directed one additional payment be made to Smith Interior to ensure delivery of the items that Defendant believed he had agreed to purchase for the New York apartment.

Defendant is a resident of St. Louis County in the State of Missouri.  While he has maintained, from time-to-time, homes in other states, his principal and primary place of residence is and has been for more than 50 years in St. Louis County, Missouri.  Defendant has never owned, rented or leased any real property located within the state of Florida.  He has never had any mailing address, telephone listing, or bank account in the state of Florida.  Defendant has never maintained a registered agent in the state of Florida, and he has never authorized any

person to accept service of process on his behalf in the state of Florida.  Over the last ten years,

the only trips Defendant has taken to the state of Florida were occasionally to visit his now-

deceased father, twice to attend a charitable wine auction, and occasionally to attend a

shareholders' meeting for an Arizona corporation.  At most, he has traveled to Florida once or

twice a year.  None of Defendant's trips to Florida were related to his dealing with Plaintiff.  At

no time did Defendant ever travel to Florida to meet with any representative of Plaintiff.

Defendant requests that this Court dismiss this action for lack of personal jurisdiction.


## II.   <u>LEGAL STANDARD</u>

The determination of whether a court has personal jurisdiction over a nonresident

defendant involves a two-part analysis.  *See Cable/Home Communication Corp. v. Network*

*Productions, Inc.*, 902 F.2d  829, 855 (11th Cir. 1990).  First, the court must determine whether

the requirements of the applicable state statute governing personal jurisdiction are satisfied.  *See*

*Miami Breakers Soccer Club v. Women's United Soccer Association*, 140 F.Supp.2d 1325, 1327

(S.D. Fla. 2001).  Second, the court must determine whether its exercise of personal jurisdiction

meets the requirements of the due process clause of the Fourteenth Amendment.  *See id.* (citing

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).  A

federal court applying Florida's long-arm statute must do so as would the Florida Supreme Court.

*See id.* at 1328 (citing *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701

F.2d 889, 890 (11th Cir. 1983)).  "A plaintiff seeking to subject a nonresident defendant to

jurisdiction of the court through the long-arm statute must do more than allege facts to show a

5

*possibility* of jurisdiction." Id. (emphasis added) (quoting *Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1983)).

A plaintiff alleging personal jurisdiction must plead facts in the complaint that support the existence of personal jurisdiction over the defendant. *See id.* (citing *Future Tech*, 218 F.3d at 1249). If a complaint pleads such facts, the burden shifts to the defendant to present "affidavits, testimony or other documents to challenge the plaintiff's jurisdictional allegations." *Id.* A successful challenge on the defendant's part shifts the burden back to the plaintiff to provide similar information in support of the jurisdictional allegations. *See id.* When a plaintiff must present extraneous information to buttress the complaint's allegations of jurisdiction, the plaintiff bears a heavy burden of proving the existence of jurisdiction: "once a defendant has relied on affidavits, documents, or testimony to challenge the jurisdiction of the court, 'the burden is on the plaintiff to *prove* jurisdiction by affidavits, testimony or documents." *Voorhees v. Cilcorp, Inc.*, 837 F.Supp. 395, 398 (M.D. Fla. 1993) (emphasis added) (citing *Jet Charter*, 907 F.2d at 1111). It is unnecessary, however, for the parties to submit additional materials concerning the jurisdiction issue if the complaint fails to allege sufficient facts to support the allegations of jurisdiction. *See Miami Breakers*, 140 F.Supp. at 1327. *See also Aero Mechanical Electronic Craftsman v. Parent*, 366 So.2d 1268, 1271 (Fla. 1979) ("[T]he burden never shifted to appellant since the Third-Party Complaint only alleged that the defective product left appellant's control and ultimately reached the plaintiff.").

The due process clause of the United States Constitution "protects an individual's liberty interests in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 471-

6

472 (1985). "Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consolidated Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(citations omitted).

### III.   <u>DISCUSSION</u>

Defendant maintains that he is not subject to jurisdiction under the Florida long-arm statute because there was no requirement that he make payments to Plaintiff in Florida. Further, Defendant explains that he understood that the payments he made were for the various manufacturers to begin production of the furniture Defendant believed he had purchased. Even if the allegations of the Complaint are sufficient under the long-arm statute, Defendant maintains that the Complaint fails to allege any facts that demonstrate Defendant has the sufficient minimum contacts with the state of Florida.

The first prong of jurisdictional analysis under Florida law involves the question of whether jurisdiction is proper under Fl. Stat. § 48.193. Plaintiff alleges that this Court has jurisdiction over Defendant based on Florida Statute § 48.193(1)(g), which provides as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

***

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Florida Statute § 48.193(1)(g).  The breach alleged in the complaint is a "fail[ure] to pay for items when due."  The Proposal further states that Defendant, if he agreed to the terms thereof, was to sign the document and return it with his deposit check.  Plaintiff's place of business has at all times been located in Palm Beach County, Florida, as was indicated on the Proposal itself.  Therefore, the only place where payment could have been made was at Plaintiff's office in Palm Beach.  Moreover, even if Defendant's assertion regarding what the Proposal did or did not require with respect to payment was accurate, it would not change the result of the statutory analysis.  "Florida courts have consistently held that where the contract is silent as to place of payment, it is presumed to be the place of residence of the payee."  *Global Satellite Communication Co. v. Sudline,* 849 So.2d 466, 468 (4th DCA 2003); *Balboa v. Assante*, 958 So.2d 573, 574 (Fla. 4th DCA 2007).  The failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy section 48.193(1)(g).  *Smith Architectural Group, Inc. v. Dehaan,* 867 So.2d 434, 436 (Fla. 4th DCA 2004); *Global Satellite,* 849 So.2d at 468.[1]

Defendant argues that the Proposal did not "specifically require" that payment be made in the state of Florida and that he "understood" that the payments were not actually for Plaintiff but, instead, were for third-party furniture manufacturers.  Defendant does not cite to any item in the Complaint, the Proposal or anywhere else in the record in support of his assertion, other than his own affidavit.  Nor does he cite to any legal authority for the proposition that his purported

---

[1]Defendant notes in his reply that he did not sign the Proposal.  Defendant did not raise this issue in his initial motion to dismiss, however.  S.D. Fla. L.R. 7.1(C) prohibits the raising of new arguments in reply briefs.  Accordingly, the Court will not address what impact, if any, the fact that Defendant did not sign the Proposal has on the jurisdictional analysis.

"understanding" regarding the payments has any impact whatsoever on the statutory analysis.

Although the Proposal refers to the "unit price" for each item purchased by Defendant and does

not specifically reference any design work, the fact remains that Defendant was to remit the

balance due to Plaintiff in Florida.  The Court does not deem it significant that the Proposal does

not specifically mention design work.  Indeed, if Defendant merely wanted to purchase the items

listed in the Proposal, he could have done so independently rather than retain the services of an

interior designer.

Whether the due process prong is satisfied depends on the nature of the services Plaintiff

provided Defendant.  The allegation that Defendant failed to make a payment in Florida is

insufficient to satisfy the due process prong of the jurisdiction analysis.  *See Banco Cont'l. S.A. v.*

*Transcom Bank (Barbados), Ltd.*, 922 So.2d 395, 399 (Fla. 3d DCA 2006) ("It is well-settled that

a failure to pay money in Florida, without more, is insufficient to satisfy the constitutional due

process minimum contacts requirement").  Nor is the fact that Defendant mailed payments to

Plaintiff in Florida sufficient to establish personal jurisdiction.  *See Bruzzone Roldos v.*

*Americargo Lines, Inc.*, 698 So.2d 1368, 1370 (Fla.3d DCA 1997) (holding that the purchase of

goods at regular intervals from a Florida corporation and the making of payments in Miami were

not sufficient minimum contacts so as to confer personal jurisdiction over an out-of-state

individual); *Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exchange, Inc.*, 615

So.2d 249, 250 (Fla. 3d DCA 1993) (holding that nonresident buyer who placed two orders in

Florida and arranged for payment in Florida lacked sufficient minimum contacts with Florida).

Nevertheless, "[t]he due process requirement of minimum contacts may be satisfied,

however, when it is established that a non-resident defendant entered into a contract with a

9

Florida party for substantial services to be performed in Florida...." *Bohlander v. Robert Dean & Associates Yacht Brokerage, Inc.*, 920 So.2d 1226, 1228 (Fla. 3d DCA 2006) (*citing Smith,* 867 So. 2d at 436).  Under those circumstances, a "defendant has purposely availed himself of the privilege of conducting activities in Florida." *Id.*  (*citing Smith Architectural*, 867 So. 2d at 436 (additional citations omitted)).

Here, although Defendant is a Missouri resident and the apartment being decorated is in New York, Plaintiff performed a substantial portion of its design services for Defendant in Palm Beach.  Mr. Kopp avers that during the course of working on a project for a client, Plaintiff performs important services both at the actual project location and at its office in Palm Beach. Many of these services can only be carried out at the office.  All of the administrative work and the overwhelming majority of the design work occurs in the office.  Additional services that were performed in the Palm Beach office include, but are not limited to, the following: determine/locate material and furniture; review construction documents; receiving, researching and responding to numerous emails from Defendant's agents, including his architect and contractor; development of a furniture floor plan; receiving all quotes on merchandise; receiving samples for approval of furniture, fabric, etc; preparing Proposals; preparing purchase orders for vendors to order the materials; ongoing follow-up with vendors to ensure expedient and timely handling of orders and deliveries; arranging and coordinating deliveries to workrooms and, ultimately, to the apartment; receipt of payments from Defendant; and distribution of deposits and payments to vendors.  There were numerous telephone conversations between Defendant and/or his agents (including his architect and contractor) and Plaintiff's personnel in the office. There were also dozens of emails, faxes and letters between Plaintiff's personnel from the Palm

Beach office and Defendant or his agents between October 2007 and January 2008.  While these communications cannot form the basis of personal jurisdiction in and of themselves, *O'Brien Glass Co. v. Miami Wall Sys., Inc.*, 645 So.2d 142 (Fla. 3d DCA 1994) (exchanging phone calls with Florida seller during contract negotiations and execution does not confer personal jurisdiction), these communications do demonstrate that Plaintiff performed substantive design services for Defendant in Florida.

Florida courts have determined that the due process requirement has been satisfied under similar circumstances.  For example, the facts in the *Smith Architectural* case are practically identical to those of the instant case.  There, the plaintiff was an architectural firm whose place of business was located in Palm Beach County, Florida.  867 So. 2d at 435.  The defendant, a resident of Indiana, solicited the plaintiff's services in connection with a residential construction project in Indiana.  *Id.*  After traveling to Indiana to meet with the defendant, the plaintiff returned to Florida and prepared an agreement for architectural services.  *Id.*  The plaintiff mailed the agreement to the defendant in Indiana, where she executed it and returned it to the plaintiff in Florida.  *Id.*  The plaintiff performed under the agreement and then brought suit in Palm Beach County court when the defendant failed to pay.  *Id.*  The trial court granted the defendant's motion to dismiss for lack of personal jurisdiction.  *Id.*

That decision, however, was reversed on appeal.  Notwithstanding that the plaintiff and the defendant never met in Florida and that the residence at issue was located in Indiana, the plaintiff's affidavit established several key facts which led to the reversal of the trial court's decision.  In particular, the court noted that the defendant had solicited the plaintiff in Palm Beach County, that there had been many telephone conversations relating to the project from the

plaintiff's office in Palm Beach County, and that the design work for the project was done at the Palm Beach County office. *Id*. The court concluded that the fact that the services to be performed by the plaintiff under the contract were performed in Florida satisfied the due process prong of the jurisdictional analysis. *Id.* at 437.

Defendant argues that *Smith Architectural* is distinguishable because the substance of Plaintiff's work in the instant case was to be performed outside Florida. There is nothing in the record to support this conclusory assertion, and Defendant does not discuss any of the services that were actually provided by Plaintiff in Florida, other than Plaintiff's communication with him via telephone, email and letters. Defendant's argument that none of his meetings with Plaintiff occurred in Florida is of no consequence in light of the holding in *Smith Architectural*.

Defendant also argues that *Smith Architectural* is "out-of-line" with a later decision from the same court. In *Woodard Chevrolet, Inc. v. Taylor*, 949 So.2d 268 (4th DCA 2007), the court found that the California defendant's contacts with Florida were insufficient to satisfy the due process requirements for the exercise of jurisdiction by Florida courts. *Id.* at 270-271. In that case, the defendant contracted with a Florida marketing firm to publish, print and mail fliers about the defendant. *Id*. at 269. The defendant made payments to the plaintiff in Florida, and the plaintiff performed the design, production and printing of the fliers in Florida. *Id*. Significantly, however, in *Woodard*, it was the Florida plaintiff who solicited the foreign defendant. *Id.* at 270 ("[Plaintiff] initially contacted [defendant] in California and solicited [defendant's] business through its sales agent in California."). In *Smith Architectural*, the same court stated that the fact that the defendant had initially contacted the plaintiff and solicited its business was "important."

*Smith Architectural*, 867 So. 2d at 437.  Here, Defendant solicited Plaintiff, thereby aligning this case with *Smith Architectural.*

Defendant's reliance on this court's decision in *Future Technology* is similarly misplaced. That case is distinguishable because the underlying transaction was comprised of a one-time order placed by an out-of-state defendant for services to be performed by a Florida resident. 106 F. Supp. 2d at 1283.  The Florida plaintiff was retained to convert computer files that were transmitted between computers and over high-speed communications lines.  *Id*. at 1280.  Unlike the conversion of computer files at issue in *Future Technology,* the design work and related administrative services here could not be performed just anywhere – it had to be done in Plaintiff's Florida office where all of its resources were located.  *Id*. at 1283.  If Defendant already knew what particular products he wanted to order for his New York apartment and simply called to order them from Plaintiff, then perhaps *Future Technology* would apply. Plaintiff was retained to perform the design services, contact the particular vendors, review materials, coordinate the ordering, delivery and payment issues in connection with those products, and handle all of the administrative functions that go along with these services.  Under these circumstances, the constitutional due process concerns have been satisfied, and it is appropriate to exercise jurisdiction over Defendant in Florida.


## IV.   <u>CONCLUSION</u>

THE COURT, being fully advised in having considered the pertinent portions of the record, hereby

13

ORDERS AND ADJUDGES that Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction, filed October 8, 2008 **[DE 7]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 10th day of

April, 2009.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE